FILED

NOV - 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WARDELL L. TYREE,  :  CIVIL ACTION NO. 1:06-CV-0112
                   :
    Petitioner  :  (Judge Conner)

    v.

CAMERON LINDSAY and
PA ATTORNEY GENERAL,

    Respondents

Case: 1:07-cv-02019
Assigned To : Sullivan, Emmet G.
Assign. Date : 11/7/2007
Description: Habeas Corpus-2255

## ORDER

AND NOW, this 31st day of October, 2007, upon consideration of the report of
the magistrate judge (Doc. 30), to which no objections were filed, recommending that
petitioner's motion to lift the stay of his petition for writ of habeas corpus (Doc. 26) be
denied and that the petition (Doc. 1) be transferred, and, following an independent
review of the record, it appearing that the underlying conviction and sentencing
occurred in the District of Columbia, and it further appearing that all witnesses,
counsel, and records of the conviction are located within the District of Columbia, and
the court concluding that the interests of justice would best be served by the transfer
of the petition to the United States District Court for the District of Columbia, see 28
U.S.C. § 2241(d) (permitting the transfer of habeas petitions between the district of
incarceration and the district of sentencing "in the exercise of [the court's] discretion
and in furtherance of justice"), it is hereby ORDERED that:

1. The report and recommendation of the magistrate judge (Doc. 30) is
   ADOPTED.

2. Petitioner's motion to lift the stay of his petition for writ of habeas corpus
   (Doc. 26) is DENIED.

Certified from the record
Date _October 31, 2007_
Mary E. D'Andrea, Clerk
Per _____
Deputy Clerk

3.  The above-captioned case is TRANSFERRED to the United States District Court for the District of Columbia.

4.  The Clerk of Court is directed to CLOSE this file.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

ADMINO, CLOSED, HABEAS, PROSE, STAYED

# United States District Court
## Middle District of Pennsylvania (Harrisburg)
### CIVIL DOCKET FOR CASE #: 1:06-cv-00112-CCC

Tyree v. Lindsay et al
Assigned to: Honorable Christopher C. Conner
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 01/17/2006
Date Terminated: 10/31/2007
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Wardell L. Tyree**

represented by **Wardell L. Tyree**
08338-007
USP-Canaan
P.O. Box 300
Waymart, PA 18472
PRO SE

V.

**Respondent**

**Cameron Lindsay**

represented by **Dennis Pfannenschmidt**
U.S. Attorney's Office
228 Walnut Street
Suite 202
Harrisburg, PA 17108
717-221-4482
Email:
Dennis.Pfannenschmidt@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**G. Thiel**
U.S. Attorney's Office
235 N. Washington Avenue
P.O. Box 309
Scranton, PA 18503
570-348-2800
Fax: 3482830
Email: mike.thiel@usdoj.gov
*ATTORNEY TO BE NOTICED*

Certified from the record
Date *October 31, 2007*
Mary E. D'Andrea, Clerk
Per *[signature]*
Deputy Clerk

**Respondent**

**PA Attorney General**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/17/2006 | 1 | PETITION for Writ of Habeas Corpus , filed by Wardell L. Tyree. (Attachments: # 1)(aaa) (Entered: 01/17/2006) |
| 01/17/2006 | 2 | Application for Leave to File Pro-se by Wardell Tyree. (aaa) (Entered: 01/17/2006) |
| 01/17/2006 | 3 | EXHIBIT by Wardell L. Tyree. (aaa ) (Entered: 01/17/2006) |
| 01/17/2006 | 4 | PRISONER LETTER ISSUED w/ Notice & Consent Form. (aaa) (Entered: 01/17/2006) |
| 01/20/2006 | | Case file to Lois Fuller from J.Blewitt's Office. (rm, ) (Entered: 01/20/2006) |
| 01/20/2006 | 5 | ADMINISTRATIVE ORDER directing the prisoner to pay the filing fee or file Application to Proceed IFP within 30 days or case will be dismissed.Signed by Lois A. Fuller on 1/20/06. (prose, ) (Entered: 01/20/2006) |
| 01/26/2006 | 6 | MEMORANDUM Filed by Wardell L. Tyree. (bg, ) (Entered: 01/26/2006) |
| 02/09/2006 | 7 | H/C PETITION Filing fee: $ 5.00, receipt number 333 105169, WARDELL TYREE (ga, ) (Entered: 02/09/2006) |
| 02/17/2006 | 8 | REPORT AND RECOMMENDATION: IT IS RECOMMENDED that this case be stayed pending the petitioner's exhaustion of the available state court remedies with respect to his Constitutional claims. If Petitioner is denied D.C. state court relief, he should be given 30 days from the time of denial to return to federal court to resume his Habeas Petition. NOTICE; Exceptions to be filed within 10 days. Objections to R&R due by 3/9/2006Signed by Judge Thomas M. Blewitt on 2/17/06. (jb, ) (Entered: 02/17/2006) |
| 04/04/2006 | 9 | ORDER re: report & recommendation of magistrate judge 8 - It is hereby ORDERED that: 1. The report & recommendation of the magistrate judge 8 is ADOPTED.; 2. Proceedings on the petition for writ of h/c 1 are STAYED pending conclusion of D.C. ct proceedings w/ re: ptnr's claims.; 3. Ptnr shall file w/ this ct a notice of the pendency of D.C. ct proceedings w/ copy of latest order... by 6/1/06...; 4. Ptnr shall file w/ this ct a notice of the conclusion of D.C. ct proceedings w/ copies of all orders... w/in 30 days of date of final decision of D.C. ct.; 5. Failure to comply w/ this order will result in vacation of stay... & dismissal of petition for writ of h/c.; 6. Clrk of Ct is directed to CLOSE this case for statistical purposes only.; 7. The above-captioned case is REMANDED to the magistrate judge for further proceedings consistent w/ this order. (See order for complete details.) Signed by Judge Christopher C. Conner on 04/04/06. (ki) (Entered: 04/04/2006) |
| 06/02/2006 | 10 | Compliance Report Filed by Wardell Tyree. (bg, ) (Entered: 06/02/2006) |

| 06/22/2006 | 11 | Letter from Wardell L. Tyree filed on 6/22/2006 (bg, ) (Entered: 06/22/2006) |
| 07/12/2006 | 12 | STATUS REPORT by Wardell L. Tyree. (bg, ) Additional attachment(s) added on 7/13/2006 (bg, ). (Entered: 07/12/2006) |
| 07/13/2006 | | Documents # 13 & 14 DELETED. Images are now attached to Doc. # 12 as Supplements. (bg, ) (Entered: 07/13/2006) |
| 08/14/2006 | 13 | Document Filed by Wardell L. Tyree entitled Application for permission to file. (bg, ) (Entered: 08/14/2006) |
| 09/19/2006 | 14 | ORDER. The Clerk is directed to add the US Attorney to the docket. Within 20 days the US Attorney is directed to file a civil action to correct inaccuracies in the bureau of prisons files reguarding the date petitioner is to receive his initial parole hearing, and a mandamus action to compel the bureau of prisons to find his legal mail that contained copies of his trial transcripts and records to be used with regards to the above captioned stayed habeas petition, Doc. 13 Signed by Judge Thomas M. Blewitt on 9/19/2006. (bg, ) (Entered: 09/19/2006) |
| 10/10/2006 | 15 | MEMORANDUM OF LAW by Cameron Lindsay re 13 Document Filed. (Attachments: # 1 Unpublished slip opinions)(Thiel, G.) (Entered: 10/10/2006) |
| 10/18/2006 | 16 | ORDER; We shall deny Petitioner's Aug 14, 2006, application for Permission to file in this habeas case a Civil Action under the Privacy Act, 5 USC 552, et seq., and a Mandamus Action under 28 USC 1361. (Doc 13). SO ORDERED. Signed by Judge Thomas M. Blewitt on 10/18/06. (jb, ) (Entered: 10/18/2006) |
| 10/19/2006 | 17 | RESPONSE by Wardell L. Tyree to 15 Memorandum of Law. (bg, ) (Entered: 10/19/2006) |
| 10/19/2006 | 18 | STATUS REPORT by Wardell L. Tyree. (bg, ) (Entered: 10/19/2006) |
| 10/25/2006 | 19 | ORDER; We shall deny Petitioner's Oct 19, 2006 a Motion for Clarification of the Record and for a Civil Action Case Number. (doc 17). Upon exhaustion of the BOP administrative remedies, Petitioner may file a Civil Action under the Privacy Act, 5 USC 552, et seq., and a Mandamus Action under 28 USC 1361, by submitting separately, proper pleadings with this Court. SO ORDERED.Signed by Judge Thomas M. Blewitt on 10/25/06. (jb, ) (Entered: 10/25/2006) |
| 10/25/2006 | 20 | ORDER; IT IS ORDERED that the clerk is directed to provide a copy of Petitioner's Status Report (Doc 18) to Assistant US Attorney Dennis Pfannenschmidt. (Copy sent from chambers) Signed by Judge Thomas M. Blewitt on 10/25/06. (jb, ) (Entered: 10/25/2006) |
| 01/03/2007 | 21 | STATUS REPORT by Wardell L. Tyree. (bg, ) (Entered: 01/03/2007) |
| 01/30/2007 | 22 | STATUS REPORT by Wardell L. Tyree. (bg, ) (Entered: 01/30/2007) |
| 02/07/2007 | 23 | STATUS REPORT by Wardell L. Tyree. (bg, ) (Entered: 02/07/2007) |

| 04/27/2007 | 24 | STATUS REPORT by Wardell L. Tyree. (rm, ) (Entered: 04/27/2007) |
|---|---|---|
| 06/20/2007 | 25 | STATUS REPORT by Wardell L. Tyree. (bg, ) (Entered: 06/20/2007) |
| 07/20/2007 | 26 | MOTION to Transfer Case by Wardell L. Tyree.(bg, ) (Entered: 07/20/2007) |
| 08/24/2007 | 27 | ORDER; IT IS ORDERED that the US Attorney shall respond to Petitioner's Motion to Transfer (Doc 26) on or by Sept 14, 2007. Signed by Judge Thomas M. Blewitt on 8/24/07. (jb, ) (Entered: 08/24/2007) |
| 09/10/2007 | 28 | RESPONSE by Wardell L. Tyree to 27 Order. (ep, ) (Entered: 09/10/2007) |
| 09/14/2007 | 29 | BRIEF IN OPPOSITION re 26 MOTION to Transfer Case filed by Cameron Lindsay. (Attachments: # 1 Unpublished slip ops)(Thiel, G.) (Entered: 09/14/2007) |
| 10/09/2007 | 30 | REPORT AND RECOMMENDATION; IT IS RECOMMENDED that Petitioner's Motion to Transfer from State Court or, in the Alternataive, Motion to Lift the Stay Order of April 4, 2006 (Doc 26) be denied. It is also recommended that the Govt's alternative request (Doc 29, p.10) that Petitioner's present Sec2254 habeas case be transferred to the USDC of the District of Columbia, be granted for the convenience of the parties and in the interest of justice. See Johnson v. Miner, 3:CV-06-2309, slip op. (MD Pa Jan 3, 2007)(J.Nealon); Reynolds v. Miner, 3:CV-06-2160, Slip op. (MD Pa Dec 5, 2006)(J.Nealon); Resper v. Miner, 3:CV-06-2253, slip op. (MD Pa, Dec 5, 2006)(J.Nealon); Graham v. Smith, 3:CV-05-0719, slip op. (MD Pa.Jan4, 2006)(J.Kosik). NOTICE; Exceptions to be filed within 10 days. Objections to R&R due by 10/26/2007Signed by Judge Thomas M. Blewitt on 10/9/07. (jb, ) (Entered: 10/09/2007) |
| 10/31/2007 | 31 | ORDER Are: report & rec of magistrate judge 30 - It is hereby ORDERED that: 1. Report & rec of MJ 30 is ADOPTED.; 2. Ptnr's motion to lift stay 26 is DENIED.; 3. Case is TRANSFERRED to USDC for Dist of Columbia.; 4. Clrk of Ct directed to CLOSE case. (See order for complete details.) Signed by Judge Christopher C. Conner on 10/31/07. (ki) (Entered: 10/31/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/31/2007 11:13:22 | | |
| **PACER Login:** us5329 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 1:06-cv-00112-CCC |
| **Billable Pages:** 3 | **Cost:** | 0.24 |



# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WARDELL L. TYREE
    Petitioner,

**1: CV 06 0112**

Vs.

Civil Action No:

CAMERON LINDSAY, Warden,
U.S. Department OF justice,

Presentation Of This Writ
Pursuant To 28 U.S.C. 2254

**FILED SCRANTON**

JAN 17 2006

PER
DEPUTY CLERK

### Affidavit In Support Of This Habeas Petition
### And Points Of Authority In Support Of The Issues Presented

This matter Comes before this Honorable Federal District Court, where this "State Prisoner" swears under the penalties of perjury, that the District Of Columbia Superior Court, and the District Of Columbia's Court Of Appeals have committed errors that have substantially affected this Petitioner's rights, and that the DC Courts stead-fast refusal to recognize these "plain errors" or address the merits of the issues as presented, has cast serious doubt upon the integrity and fundamental fairness of the DC Court system, and the Courts continued evasion of the issues, that were fairly presented, has resulted in a complete miscarriage of justice .

This Petitioner further avers that he has continuously made the DC Superior Court aware of these obvious constitutional violations that were inflicted upon him "even before the trial begain"......

And the Complaints made during trial, and in the Post-Conviction Motions seem to have fallen upon deft ears, and were wholly inadequate to hold the DC Superior Court to the U.S. Constitution, or its own rules and regulations, or its own prior Precedent....

After Post-Trial proceedings, a Notice Of Appeal" and a Pro-se Brief was filed in the District Of Columbia Superior Court / Appellant Division, case No:98CF-1301, and after 4 years of bitter haggling with several different Appellant Attorneys over "which issues should be presented on Direct Appeal",, finally, Appellant Counselor David C. Gray filed a motion to the DC Court Of Appeals, asking to be allowed to file the Pro-se Brief and its Amendment, along with the Counseled Appellant Brief, or in the alternative, allow leave to withdraw, see exhibit 1 here attached..

The DC Appellant Division **agreed to adjudicate both, the Pro-se Brief and its amendment, and the Appellant Brief drafted by Counsel, see the Court Order at exhibit 1 dated March 24ᵗʰ 2004.**

After gaining "conditional consent" to allow David C. Gray to file a Brief in this case, and after making the agreement to adjudicate both Briefs, and its amendment, the DC Court Of Appeals surreptitiously–and without any notice to this Petitioner, decided to call Attorney David C. Gray down to the Courthouse to give oral arguments **on his Brief, while leaving the Pro-se Brief and its amendment–unrepresented,** because Counsel had refused to adopt the issues raised therein....

Therefore, the issues raised in the "pro-se Amendment" that was attached to the Pro-se Appellant Brief-were **left completely unexhausted on direct appeal,** as you will note that the Court Of Appeals made no reference to the "Pro-se Amendment" at all in its "Memorandum Opinion" here attached at exhibit 2.

Within 15 days of receiving the DC Court Of Appeals decision, Petitioner, acting Pro-se, filed a motion to "Re-call The Mandate", also attached at exhibit 2.

..........................That Motion was also denied without any written opinion on its merits.

To avoid a complete miscarriage of justice, and in an effort to hold the DC Court Of

Appeals to its own "Order and agreement" entered on March 24th/2004, this Petitioner

**filed in the U.S. District Court -in the District Of Columbia, No:05-1149 a Writ Of**

**Mandamus-to compel the DC Court Of Appeal Judges to  adhere to their own**

**"Order and agreement",** and this Petitioner also requested "a Stay On The Time Limit"

in which to file this Habeas Corpus Action under 28 U.S.C. 2254. See exhibit 3 here

attached, and also see Appeal number :05-5392, wherein an appeal was filed in relation to

No:05-1149......

Because no action has yet been taken in the U.S. Court Of Appeals-DC Cir. No:05-5392,

and because "no Stay On The Time Limit" has yet been issued, this Pro-se Petitioner is

now forced to file this Writ Of Habeas Corpus Pursuant to 28 U.S.C. 2254, in this Court,

in this jurisdiction, before the time to do so -expires...

# Questions/and Issues Presented

1. Did the trial Judge error when he failed to "Properly Instruct The Jury" with the mandatory "Franklin Instuctions" 392 A.2d. 516 (DC1978)  365 US. 1 (1961) (a)and did the trial Judge violate the U.S. Supreme Courts holding in Sullivan Vs. Louisiana, while violating this Petitioner's Fifth and Sixth amendment rights when the Judge supplanted his determination for what "a properly instructed jury would have done" if he had given the proper instructions.

2. Where the U.S. Supreme Court has held that a Prosecutor may not use conflicting or inconsistent theories to convict multiple Co-defendants of the same crime at separate proceedings, 367 F.3d. 594, No:04-637, was it "Plain Error" for the trial Judge to give the jury "aiding & abetting instructions" in the middle of this Petitioner's trial, while at the Co-defendant's earlier court proceedings, the same Prosecutor proffered that the co-defendant was only an "aider & abettor, and the court accepted his plea as such, and in open court, the Prosecutor alleged that this Petitioner was the principle offender. (a) This mid-trial change in theory surprised this Petitioner and his court appointed attorney, and it left no time to pre-pare a second defense, did this mid-trial change in theory comport with due-process ?? 120 F.3d. 1046, and 840 F.2d. 118.

3. Where the Prosecutor had conceded to the jury, that he could not prove the corpus-delicti of Burglary (entry by the accused) it was reverseable error to allow the jury to speculate or infer the elements of Burglary from the "alleged possession of recently stolen property-unexplained,' because this Petitioner had choosen to remain silent, and not testify, 522 F.2d. 666 (DC.Cir) and (a) " as a matter of law" the motion for a Judgment of Acquitttal on this particular issue, should have been granted in accordance with DC Court of Appeals prior Precedent @ 300 A.2d.716, where there was no physical evidence and no witnesses to specifically place this Petitioner "inside" either of the rooms alleged to have been burglarized.....To allow an inference, or speculation on this essential elements would be inconsistent with the pre-requisite of "proof beyond a reasonable doubt" as established by the U.S. Supreme Court's  In Re, Winship.

4. Where the prosecutor's key witness has "repeatedly swore under oath" that "there was only one wallet" in the whole episode of searching, did the Prosecutor violate the U.S. Supreme Courts Precedent established in both Brady and Bagley, by witholding the documented evidence to the contrary??? and (a) would disclosure of the documented evidence of "a second wallet" along with the co-defendant's exculpatory letter have created a reasonable doubt as to whether this Petitioner actually possessed the recently stolen property/or created a doubt as to whether this Petitioner should be held liable for a crime that the alleged Co-defendant had already confessed to ???

# Questions/and Issues Presented

5. Where the Prosecutor alleged that the dormitory complex was unlawfully entered.... **With the specific intent to steal,** did the burglary occur at the very moment the unlawful entry was commenced-harboring the intent /or did two separate burglaries occur when the culprit entered two separate rooms-while still unlawfully inside that same dormitory complex????{according to the Government, when you gain entry into one dormitory, you have access to all three}..(a) Does "Punishing The Same Offense Twice" violate the Double Jeopardy Clause, and the U.S. Supreme Courts **Blockburger** test where two burglaries are charged and punished consecutively arising from one unlawful entry into the same dormitory complex???.

6. Did the trial Judge assist in violating this Petitioners Sixth Amendment rights when he refused to accept the trial Attorney's many oral and written request to withdraw representation, and by forcing that Attorney to represent a client where it was clear that the so-called Attorney/Client relationship had broken down, and irreconcilable conflicts showed long before/during and after trial, and (a) did the trial Attorney's many omissions show prima-facie evidence of a lack of interest, that caused serious prejudice to his Clients defense???...

7. Did the trial Judge violate the "Confrontation Clause" of the U.S. Constitution, by relying on the **out of Court-hear-say statements-allegedly made to a police on the scene,** where those statements were neither written, sworn to, nor made available during the Discovery process, and the defense did not have any opportunity to subpoena those alleged witnesses, or cross-examine the alleged witnesses that the Judge relied upon to make the criticial rulings made at the "Second Suppression Hearing, and (a) Did the defense Attorney assist the Government in violating his Clients right to confrontation when the defense Attorney refused to call upon the alleged Co-defendant to take the witness stand to refute the Police Officer's out of Court hear-say statements that the Officer had attributed to the alleged Co-defendant???.....

# Issues Presented
# Statement Of Reasons For Issuing The Writ

### Question Presented

1.Did the trial Judge error when he "Failed To Properly Instruct The Jury" with the

mandatory "Franklin Instructions" @ 392 A.2d. 516 (DC.1978). And did the trial Judge

violate the U.S. Supreme Court's admonition in Sullivan Vs. Louisiana, 508 US 275

when the Judge supplanted his determination for what "a properly instructed jury would

have done" [if] he had given them the proper instruction....

And did the decision "of which of the charges to find guilt upon" made by the Judge,

**at a jury trial, violate this Petitioner's Fifth and Sixth Amendment jury trial rights**

**as repeatedly expressed by the U.S. Supreme Court in such cases as In Re, Winship**

**397 US 358 (1970) Apprendi Vs. New Jersey, 530 US 466 (2000) and Blakley Vs.**

**Washington, 124 S.ct. 2531 (2004) and was that decision tantamount to a directed**

**verdict-for the Government ..??**

### Statement Of Reason .......

This Pro-se Petitioner adamantly believes that dismissal, or reversal for a new trial is

warranted, where both, the U.S. Attorney, and the DC Court Of Appeals have already

conceded to the fact, that it is "a Plain Error" for the trial Judge **"to fail to properly**

**instruct the jury" with the mandatory Franklin Instruction** @ 392 A.2d. 516 (DC.

1978)

Likewise, the U.S. Supreme Court, in U.S. Vs. Millanovich, 365 US 551, 5 L.Ed.2d.

773 (1961) has held it to be "plain error" that substantially affects a defendants right to a

fair trial [if] the trial Judge "fails to properly instruct the jury", and the higher Court also

expressed the fact that this error requires reversal and or dismissal, because a trial Judge

..................can not supplant his own determination-for what a properly instructed jury would have done, if the Judge had not committed a "plain error" in the first place, as was done in this case.   See Feb,23rd/trial trans, page 53, @ exhibit 4.

Also at exhibit 4 is the direct result of the Judges "failure to properly instruct the jury"....

The **Verdict Form** clearly shows that the jury was under the mis-impression or false belief that they could legally convict a person on all three of the inconsistent charges that were indicted, **Receiving Stolen Property-Burglary-and Theft.**   It is obvious that the jury were not properly instructed, because they marked guilty-each and every charge on the verdict form.

Had they been properly instructed as **Franklin** mandates at 392 A.2d. 516, they would have known-before deliberating,, **that they-would have to choose, which of the three charges to find guilt upon.**

But since they were not properly informed before deliberating, they simply marked guilty upon all three charges....

Subsequently, **as a so-called remedy, to his failure to give** the Franklin Instructions, the Judge decided, **to simply dismiss "the Receiving Stolen Property counts"**........

This Petitioner retorts that this action on part of the trial Judge, at a bench conference, where the Petitioner was excluded{page 53, exhibit 4} and without any objection from the defense Counselor (Paul Signet) it violated this Petitioner's Sixth amendment right to effective assistance of Counsel, and it violated Petitioner's Fifth and Sixth amendment jury-trial rights when the Judge supplanted his determination-for what a properly instructed jury would have decided, if he had given them the mandatory Franklin instruct-ion, and it is obvious that the Judges decision-at this jury trial- was tantamount to .........

..........................a directed verdict for the Government, where the Governments Prosecuting Attorney **had already admitted-in open Court, that he could not prove the corpus-delicti of Burglary** {entry by the accused} see exhibit 5, Feb 23rd/trial trans, pages 25, 31-32, and 46-47 wherein the Prosecutor conceded to the jury, that **nobody ever saw this Petitioner enter the building or neither of the rooms therein.** Although this admission or acknowledgment from the Prosecutor straight forth tells the jury that the prosecutor knows that his key-witness had already lied in open at the Probable Cause Hearing, at the Grand Jury, and on the falsely Police Report #961037, the jury is expected to forget that fact, and convict this Petitioner for Burglary, simply because he chose not to testify/or try to explain-away this same witnesses false accusations that this Petitioner Possessed Recently Stolen Property.....and from that false accusation, the jury **is asked to infer-burglary.** See Feb,23rd, trans, page 28, attached @ exhibit 5.

First, the inference of Burglary-from the allegation of Possession of Recently Stolen Property is illegal, U.S. Vs. White, 300 A.2d. 716 (DC.) U.S. Vs. Carter, 522 F.2d. 666 (DC.Cir.1975).

**Secondly, if the jury had been properly instructed,** and knew that they had to choose which of the charges to find guilt upon, more then likely, they would have choosen Possession Of Recently Stolen, because without any proof on the essential element of burglary {entry by the accused} they could not meet the burden of **In Re, Winship's** Proof beyond a reasonable doubt without surmise or speculation on the element of Burglary...

# Issues Presented
## Statements Of Reasons For Issuing The Writ

**Question Presented**

**2.** Where the U.S. Supreme Court has made clear that a Prosecutor may not use

conflicting or inconsistent factual theories to convict multiple Co-defendants of the same

crime at separate trials,,, did the use thereof, violate due-process, 162 L.Ed.2d. @ 157

(J. Souter concurring). And was it "Plain Error" for the trial Judge to give "**Aiding and**

**abetting instructions**" to the jury in the middle of this Petitioner's trial, where that

Statute was not indicted, and when at a separate proceeding-a year earlier, the same

Prosecutor had proffered that the alleged Co-defendant **was the aider and abettor, and**

**only the "look-out-man"**, and the Court accepted the Prosecutor's proffer as true, and

the Court accepted the Co-defendants Plea-as an aider and abettor-and sentenced him

according-long before this Petitioner's trial started...

This mid-trial flip-flop on the factual theory was wholly inconsistent **with the prior**

**notice, and the mid-trial surprise left no time to pre-pare a "second defense".....**

Did this mid-trial conflicting change of factual theory comport with due-process "notice",

and is the conviction reliably had-under the standard of "Proof beyond a reasonable

doubt."???? see **Bradshaw Vs. Mitchell**, 162 L.Ed.2d. 143 (2005) the same at 367 F.3d.

594 (6th Cir.2004)(120 F.3d. 1046)(840 F.2d. 118) and **Jacob Vs. Scott**, 513 US 1067,

130 L.Ed.2d. 618 (1995) .

**Issue Presented**

It shall be duly noted that the issues presented under this section(2)  Were fairly

presented=and evaded on Direct Appeal, see the Memorandum Opinion from DC

Court Of Appeals here attached @ exhibit 2.

The DC Court Of Appeal did speak on the "Aiding and Abetting" subject, but the Court

never would address the issue of(1) whether it was "Plain Error" for the trial Judge "to

give the jury aiding and abetting instructions" in the middle of this petitioner's

trial, when, under the circumstances, it was well known that the "aider and abettor"

had already been convicted and sentenced -as such, in a separate proceeding a year

earlier, and (2) The DC Court Of Appeals refused to straight forth address the

constitutionality of whether the mid-trial surprise, and inconsistent-conflicting factual

theories deprived due-process "notice" and a fair opportunity to pre-pare a "Second

Defense" after Petitioner was already put on notice {by a copy of the Co-defendants Plea

colloquy} that this Petitioner would be viewed as the principle offender, and would have

to made the Government prove-beyond a reasonable doubt-to all 12 jurors, that this

Petitioner was the one who unlawfully entered that dormitory complex.

But because the Government had no witnesses that they could present, they could not

prove{entry by the accused} so they reversed course mid-trial, and convinced the

trial Judge to give "aiding and abetting instructions" in a case where the alleged

"aider and abettor" had already been convicted as such, and sentenced as such.

See exhibit 6, trial trans pages 255-256, also see the alleged Co-defendants Plea Colloquy

# Issues Presented
## Statement Of Reasons For Issuing The Writ

**Question  Presented**

**3.**Where the Prosecutor "conceded to the jury, that **he could not prove the corpus-**

**delicti of Burglary,** {entry by the accused} was it reversible error to tell the jury that they

"may speculate or infer the elements of Burglary-**from the alleged possession** of recently

stolen property, ignoring the U.S. Supreme Court admonition @ 397 US 358 and Federal

Circuit Law @ 522 F.2d. 666, (DC.Cir) and its own Precedent @ 300 A.2d. 716 (DC.App

1978).  And where the Petitioner had choose the right to remain silent during trial,

did the Prosecutor's comments that Petitioner "had not **explained or refuted** the alleged

possession of the stolen property-violate the fifth amendment rights of the Petitioner,

especially after the Prosecutor had told the jury that "if he gives no explaination" then

you may infer that he is the burglar - from his unexplained possession of stolen property.

(Allegedly, a wallet that belong to a student who lived in the dormitory complex) see

Feb,23rd, trial trans, page 28, attached @ exhibit **5** ,

**Issue Presented**

Where The Bill Of Rights guarantees vigorous adversarial testing of guilt and innocence

and conviction "only"by proof beyond a reasonable, these constitutional guarantees

should have more then sufficiently detered the Prosecutor from asking the jury to skip

the necessary elements of the charge, and find guilt by surmise or speculation, and that

is contrary to the U.S. Supreme Courts holding in such cases as In Re, Winship, supra.

...............at 397 U.S. 358 and Sullivan Vs. Louisiana, 508 US 275, 124 L.Ed. 2d. 182

(1993) wherein it is also stated that "an inference" that relieves the State of its burden of

proving -all the elements of the charged offense-violates the due-process clause of the

Federal Constitution's fourteenth amendment..

# Issues Presented
# Statement Of Reasons For Issuing The Writ

**Question Presented**

**4.**Where it is material to the guilt or innocence of the accused, and material to the

credibilty of the Government's key-witness, and that witness "repeatedly swears under

oath" **that he only recovered one wallet**, and swore that **there was only one wallet** in a

the whole episode of searching two suspects, did the Prosecutor have a duty to disclose

documented evidence to the contrary- where that evidence was in the Governments

possession??.  And by witholding such evidence, did the Prosecutor violate clearly

established U.S. Supreme Court Precedent as set forth in such cases as U.S. Vs. Agurs,

427 US 97, 49 L.Ed.2d. 342 (1976) Brady Vs. Maryland, 373 US 83, 10 L.Ed.2d. 215.

U.S. Vs. Bagley, 473 US. 667,  87 L.Ed.2d. 481 (1985) U.S. Vs. Giglio, 405 US . 150

31 L.Ed.2d. 104. (1972)..

And would disclosure of evidence of **"the second wallet"** have created reason to doubt

the veracity of that witnesses testimony, where the Prosecutor conceded that Special

Police Officer Harris's earlier testimony was unreliable , and after the jury learned.......

........that the.same Officer had already been forced to resign for his misconduct in relation

to this case??...And would disclosure of evidence of"the second wallet" have created

"a reasonable doubt "as to which wallet" this Petitioner actually possessed at the time of

arrest, since the Officer swears that there was only one???..

**Issue Presented**

This is also one of the issues raised "Pro-se" on Direct Appeal, in the DC Court Of

Appeals, see the "Memorandum Opinion" here attached @ exhibit 2, page 4, sec, 3.

However, the DC Appellant Courts decision deviated from the point raised, and it

resulted in a decision that is contrary to clearly established Federal law as determined by

the U.S. Supreme Court in cases such as Agurs, Brady, Bagley, and Giglio, supra.

**First,** the DC Appellant Court's decision is in error, because it fatuously faults or blames

this incarcerated Petitioner because the witheld evidence was not "newly discovered", and

could have been obtained before trial, **if the ineffective defense Counselor had**

**exercised reasonable diligence in trying to obtain the evidence that he was told**

**existed-before and during trial,** see page 106, attached @ exhibit 7...

**Secondly,** the evidence witheld {a Metropolitan Police Department Property Sheet} was(1)

and is material to the determination of guilt or innocence of this Petitioner, and (2) the

evidence witheld bears directly upon the credibility of the Governments key-witness, and

(3) the documented witheld evidence was directly contrary to the key-witnesses repeated

sworen statements, and it was in the Government's Possession at all times relevant, and

(4) and a Motion For Discovery of all such evidence had been filed-long before trial.

**Finally,** with / or without a request, the Prosecutor has an affirmative obligation to produce such evidence that is in its possession , or is diligently obtainable in the interest of justice, see Agur, supra, 427 US. Id. @ 99.

So it  matters not, whether the witheld evidence was "newly discovered" or not, and timely request was made, and the evidence is indeed material to the determination of this Petitioner's guilt or innocence {in a case where surmise substituted proof beyond a reason able doubt) and the witheld evidence bears directly upon the Governments key-witnesses credibility and sworn testimony at page 106, and the "Property Sheet" attached @ exhibit 7 , was in the Governments possession -while the Governments witness was testifing contrary to the documented evidence. See Giglio, 405 US @ 151 wherein it is held that under the Federal due-process clause, the Prosecutor's suppression of material evidence justifies a new trial irrespective of good faith or bad faith.......

This Petitioner believes that disclosure of the documented evidence of "the second wallet" would have created **a reason to doubt** the veracity and credibility of the former "Special Police Officer/Craig Harris's" false testimony-especially where the Prosecutor himself admitted that Officer Harris's earlier testimony, insofar as the Probable Cause Hearing, and justifying the Stop and Arrest, and the false identification testimony, was all unreliable. See Feb 23rd /trial trans, pages 25, 31-32, and 46-47 .

Petitioner also believes that after disclosure of evidence **of the second wallet,** the Officer could have been cross-examined **as to why he had already been forced to resign as a Special Police in connection with this case.** And production of the witheld evidence of "the second wallet" would have created a serious reasonable doubt as to **"which wallet"** Petitioner actually possessed at the time of arrest.....

It should be noted that the unanimous opinion of the U.S. Supreme Court, is that when the reliability of a given witness - may well be determinative of guilt or innocence, the Prosecutor's non-disclosure of documented evidence affecting that witnesses credibility, justifies a new trial under the due-process clause of the Federal Constitution irrespective of good faith/or bad faith, hence whether the witheld evidence was "newly discovered" or not, it was incumbent upon the Government to see that justice is served-regardless of the ineffective defense Counselor's reliance upon the prosecutor, especially where the Attorney had been told before, and during trial that the "Property Sheet" existed, it was at the Metropolitan Police Department, and it would prove that Harris had made a mistake in his handling of the items recovered from both suspects.

Although the defense Counselor did file a timely request {a Roster Letter} for disclosure of such evidence, the Prosecutor still witheld "the Property Sheet" which reveals the fact that at the time of arrest, this Petitioner was in possession of "two **General Motors car keys**"and two house keys, and this Petitioner's **own wallet that contained photo's and Petitioner's drivers license.** (General Motors car keys would not fit the Ford L.T. D.) The "Property Sheet" was also need because Officer Harris swore that **the only wallet** that was on this Petitioner's  person at the time of arrest-**was a wallet that had been recently stolen from inside the dormitory complex.**

Since this Petitioner had choose the right to remain silent during trial, disclosure of the documented proof of "a second wallet" **would have created a reasonable doubt or a reasonable probability sufficient enough to undermine confidence in Officer Harris's allegations that this Petitioner possessed a stolen wallet-or a wallet that was not his own wallet.**

Moreover, the witheld "property sheet" was indeed "material to guilt or innocence" and disclosure would have changed the outcome of the proceedings, because the jury did take Officer Harris's false allegations about the search and the items removed as true.. Harris alleged that the wallet possessed by this Petitioner was stolen, and from that false allegation, the jury then speculated , surmised, or infered the elements of burglary..

Had the jury known about the witheld property sheet or the information that it reveals, it would have further discredited the veracity of Officer Harris's testimony **as to which-wallet petitioner actually possessed, since Harris swears that there was only one wallet on this petitioner at the time that he did the searching.**

Hence, an evidentiary hearing, or new trial should have been granted for review of the actual merits of the Governments obligation to disclosure.

# Issues Presented
## Statement Of Reasons For Issuing The Writ

**Question Presented**

**5.**Where the Prosecutor alleged that the dormitory complex was unlawfully entered......

**with the specific intent to steal,** did the burglary occur at the very moment the unlawful entry was committed-while harboring that intent / or did two separate burglaries occur when the culprit entered two separate rooms-while still unlawfully inside the same dormitory complex ?? 471 A.2d. 247 (DC.1983) 490 A.2d. 619 (DC.1985)..

{according to the Government, when you gain entry into one dormitory, you have access to all three}

And does "Punishment Under The Same Statute Twice" violate the Double

Jeopardy Clause of the Federal Constitution, and is it inconsistent with the U.S. Supreme

Court's holding in U.S. Vs. Blockburger, 284 US 299,  76 L.Ed. 306 (1935) where the

two burglaries are charged, "and Punished consecutively" arising from one single

unlawful entry into one dormitory complex.??.

### Issue Presented

Burglary in the second degree under DC Code 23-1801 (b)  **Is a Property Crime,**

enacted "to protect the dewelling" from criminally motived invasions. See U.S.  Vs.

Garris, 491 A.2d.  511 (DC.App.1985)

The legal definition of Burglary for Burglary under DC Code 23-1801 (b) **is, according**

**to  DC Court Of Appeals,** "an unlawful entry" while harboring the specific **intent to**

**commit a crime therein....**See U.S.  Vs.  Roane,  432  A.2d.  1218 (DC.App.1981)

Hence, **if** we give ful weight to the Governments unproven theory, and **if** this Petitioner

were one of the two Black males who unlawfully entered the "opened back-doors" of the

dormitory, **while harboring the specific intent to steal,** as the Government alleges, then

according to the Courts definition of burglary under DC Code,   **the burglary would**

**have actually occurred at the moment the two culprits unlawfully entered the**

**opened back doors of the dormitory complex-harboring larcenist intent.......**And

according to DC Superior Court Judge: N.A. Kramer, "that is" when the single burglary

occurred in this case. See Nov.5th, trans, pages 40-41 attached @ exhibit 8.

This Petitioner argues that if he had unlawfully entered the back-doors of the dormitory complex-with the intent to take the clock off the wall in the Hall-way, he would still have been charged with burglary....simply because the unlawful entry into the hall-way, while harboring the specific intent to steal-constitutes [a] burglary.

Hence the Statute of Burglary, under the Government's version of facts, was only violated once **"because the dormitory is the unlawfully entered dewelling in the case, and not the individual rooms inside the living courters.**

The Special Police did not attack this Petitioner because they believed he unlawfully entered the two rooms inside the dormitory, they Stopped and attacked this Petitioner because they falsely believed that he had unlawfully entered the building.

And that constitutes one single unlawful entry into the dormitory complex with the Specific intent to commit a crime therein...See U.S. VS. Thorne, 471 A.2d. 247 (DC.App.1985).

Further, Petitioner believes that the actual carrying away-of the property (Theft DC Code 22-3811) should not have been punished "consecutively" from the Burglary, see Roberts Vs. U.S. 508 A.2d. 110 (DC.App.1986) Taking and carrying away the same property "Punished Consecutively" implicates Double Jeopardy concerns.

Petitioner contends that "an unlawful entry" is only "an unlawful entry" without the requisite intent to take and carry away = which effectively turns "an unlawful entry" into a burglary, because a burglar, is a taker-after he has unlawfully entered harboring that specific intent.........And that is the reason that DC Superior Court Judge: N. A. Kramer ran the Co-defendant's Theft and Burglary sentences concurrent, see Kenneth McKan's "Judgment Of Commitment Order here attached @ exhibit 8 . .........

..............While on the other hand, a year later, DC Superior Court Judge:S.G. Milliken

Presided over this Petitioner's trial, and Judge Milliken not only determined which

charges this Petitioner should be convicted of, he also determined that under this set of

circumstances, this constituted "two separate counts of Burglary" and "two separate

counts of Theft, (irrespective of what Judge Kramer had ruled earlier) and he imposed

5 to 15 years on each of the burglary counts, to run consecutive to each other, and

180 days on each Theft count, to run consecutive to each other, and any other

sentence imposed, see "Judgment Of Commitment Order" here attached @ exhibit 8.

A total of 10 to 31 years this Petitioner received for allegedly aiding and abetting a man

who only received 15 years, where the records will reflect that this Petitioner's

"Criminal History" is no where near as "extensive -or horrific" as that of Mr.

McKan's.

Further, it should be noted, that DC Code 23-112 does allow "consecutive punishment"

even where two crime arise from the same continuous criminal conduct.

However, that law does not allow "consecutive punishment" unless one Offense contains

elements that the other does not , Bockburger Vs. U.S. 284 US . Id. @ 300 , Further

any statute which places persons twice in jeopardy for the same offense does not satisfy

the requirements of due process of law, see Shevlin Vs. Minnesota, 218 US 57 (1910) .

The DC Court Of Appeal  usually relies  on its holding in U.S. Vs. Byrd, 598 A.2d.386

(quote inserted)  Where the same act or transaction constitutes a violation of two distinct

statutory provisions, the test to be applied to determine whether there are two offenses or

only one, is whether each provision requires proof of an additional fact which the other

does not.

The Supreme Court recently reaffirmed the position that in applying this test, the court looks at the statutorily-specified elements of each offense and not the specific facts of a given case as alleged in the indictment or adduced at trial. "The Blockburger test has nothing to do with the evidence presented at trial. It is concerned solely with the statutory elements of the offenses charged." Grady v. Corbin, 110 S. Ct. 2084, 2093 n. 12 (1990) (emphasis in original). In Corbin, the Court contrasted the use of the Blockburger test to determine the permissibility of multiple punishments following a single trial with the appropriate test in the context of successive prosecutions. While establishing a "conduct" test in the latter "successive prosecution" context as a limitation regardless of legislative intent, it recognized the validity of the "elements" test in the multiple punishment arena as the guide to legislative intent and thereby to what punishments are constitutionally permissible.(unquote) The two Offenses punished under DC Code 22-1801 have the same elements, and the two Offenses punished under DC Code 22-3811 have the same elements, and that is why Judge N.A. Kramer properly applied the Blockburger test,while the trial Judge: S.G. Miliken ,ignored the U.S. Supreme Courts clearly established law.

## Issue Presented
## Statement Of Reasons For Issuing The Writ

### Question Presented

**6.**Did the trial judge assist in violating Petitioner's Sixth Amendment right to affective assistance from Counsel, when the Judge refused to accept the trial Attorneys many oral and written request to withdraw from this case. And was it "plain error" to force that Attorney to represent a Client where it was clear that the so-called Attorney /Client relationship was non-existent, and irreconcilable conflict showed before, during......

..............and after the trial. And can it be said-beyond a reason to doubt, that the Attorneys

many omissions did not show prima-facie evidence of a lack of interest, that caused

serious prejudice to his Client defense.???

**Issue  Presented**

Mr. Paul Signet, was the Court appointed trial Attorney who was forced to-without this

Petitioners consent-represent Petitioner during these proceedings unitl the conviction was

obtained.  Since irreconcilable conflict between that Attorney and this Petitioner was out-

right obvious, the judge decided-after the conviction was had, to appoint an assist to help

the attorney with the remaining proceedings. [ A Second Suppression Hearing and the

Sentencing Hearing] .

This Petitioner adamantly believes that the following omissions, and the obvious lack of

interest asserted by the Attorney, cause serious prejudice to Petitioner's defense and

denied any chance of receiving a fair trial.

Because of the Attorneys cavalier attitude, lack of preparedness  and his continuous .

attempts to convince or persuade this Petitioner to Plead guilty, regardless of the fact that

this Petitioner had  repeatedly told the Attorney that he was innocence, and it caused the

so-call Attorney / Client relationship to completely break-down **"during the First**

**Suppression Hearing"** see Feb,17th trans, page 2 & 3 that is when the first Motion to

withdraw was heard by the court, and the second motion was made Feb.18th, pages 84-92

attached @ exhibit 9.

In short, the record will reflect that these cumulative error's and omissions did fact cause

serious prejudice to this Petitioner's trial.

...............The following facts will show that Paul Signet had no intent on protecting this Petitioners rights, or seeing that he received a fair trial...

As earlier stated, the alleged Co-defendant {Kenneth McKan} was offered a deal to plead guilty {as the Aider and Abetter} so long as he pointed the finger at this Petitioner as the "Principle Offender", and in turn, the government also dropped the "Career Criminal" or "repeater papers" enhancements, and recommended that he be placed in a Drug Program, and he received all of the above.

However, Judge N. A. Kramer also imposed a sentence of 40 months to 15 years.

And according to Mr. McKan, that was too much time, and not part of the deal.

Not long after receiving that sentence, Mr. McKan "wrote a letter to this Petitioner" explaining why he implicated this petitioner in his criminal activities -instead of pointing the finger at his partner who got away. Mr. McKan also asked this petitioner to send Paul Signet to see him so that he could explain to the Attorney why he did what he did.

McKan also **expressed his feeling that(quote) you should not have to suffer for something that I did !!!(unquote)** That exculpatory letter was given to Paul Signet long before the first Suppression Hearing, so that he could show it to the Prosecutor.

That exculpatory letter, here attached @ exhibit 9  **was not mentioned anytime during the trial or at the suppressions, because Paul Signet swore "that he had lost the letter"**.......

However, Signet explained that the letter would be unnecessary since he had intended to put McKan on the witness stand himself, since McKan had already been subpeonaed by this Petitioner's request. Signet also told the Judge that he intended to call McKan to the witness stand, see page 203 here attached @ exhibit 9.

However, "Signet still never called Mr. McKan to the witness stand," **and he never produced the exculpatory letter, and he never mentioned the existed of the letter in the Court.**    The letter was not found until after the trial was over, but before sentencing, when the Judge finally felt he had to appoint "an assistant to help Signet. The assistant was Christine M. Lee, and it was Ms. Lee who found the letter at the bottom of a box of documents given to her by Paul Signet  that were in relation to this case. And still Signet never presented the letter to the Court, however, Ms Lee did so , at the second suppression hearing, and in post-trial Motions .

It was also Ms Lee who went to the Metorpolitan Police Department to pick-up the "Property Sheet" that the Government had witheld, and Signet refused to go get, so as to refute Harris's false accusations about "which wallet" this Petitioner had in his possession at the time of arrest.

All of the above evidence was not obtained until after Ms. Lee was appointed, and that was after the trial was over, and it is prima-facie evidence of Signet's lack of interest in affectively representing this petitioner.

After interviewing this Petitioner{Post-trial} **and then comparing** Harris's Police Report #961037, and  his sworn statements made to Judge Kramer at the Preliminary Hearing, pages 10-13, here attached @ exhibit 9, **to the direct testimony of Mr. Darryl Williams** {the eyewitness employee at apges 130-137, 295-298} and finding Mr. Williams version of facts wholly inconsistent was Harris's reasons for making the Stop and arrest, Ms Lee decided to go up to American University with a subpeona to obtain the here attached copy of Officer  Harris's  **"Personnel File"** to ascertain the reasons that he was forced to..

resign even before the indictment was handed down in this case.

Had Signet did the same, or even questioned Harris in front of the jury about his forced resignation, the outcome of the proceeding would have been different, especially if Signet would have questioned Harris as to why he violated the "preservation of evidence rules" by giving the alleged stolen wallet back to the owner-before trial, and before finger printing any of the stolen property, and then allowing the Government to elude to that evidence without having to admit any phisical evidence to the jury, it clearly shows that Signet omissions did indeed prejudice this Petitioner's defense.

Had Signet even objected to the Prosecutor's eluding to "a wallet and a screw driver"that he could not produce, the Government would have had no case.

{all that was presented as evidence at trial was, a Xerox Photo of a wallet and a debit card }

see the xerox photo @ exhibit 9. Also see trans, pages 191, 219, 231 .

Instead of mounting an objection, Signet choose to persuade this Petitioner to falsely believe that Harris's mis-handling of the evidence was not against the preservation of evidence laws.    § 5-119.02. Lost, stolen or abandoned property - Custody [Formerly § 4-153].

Statute text

All property, or money alleged or supposed to have been feloniously obtained, or which shall be lost or abandoned, and which shall be thereafter taken into the custody of any member of the police force, or the Superior Court of the District of Columbia, or which shall come into such custody, shall be, by such member, or by order of the Court, given into the custody of the Property Clerk and kept by him, except that the custody of any abandoned vehicle shall be transferred to the Abandoned and Junk Vehicle Division of the Department of Public Works. History

(R.S., D.C., § 409; 1973 Ed., § 4-152; 1981 Ed., § 4-153; Sept. 9, 1989, D.C. Law 8-24, § 6(b), 36 DCR 4575.)

That mis-information led this Petitioner to allow the xerox photo of the wallet into evidence. And albeit, there are no xerox photo's of that alleged **"screw driver"** the Prosecutor was still allowed to make mention of the screw driver before the jury, and the mere mention of "burglary tools" is highly prejudice where it was not produced or finger printed. The transcript pages here attached , 50-51, and 56-60 @ exhibit 9 clearly show that this Petitioner felt like he was being feed to the Prosecutor with no assistance from his attorney.

# Issue Presented
# Statement Of Reasons For Issuing The Writ

**Question  Presented**

**7.** Did the trial Judge violate the "Federal Confrontation Clause " of the U.S.Constitution thereby violating Petitioner's Sixth Amendment right, by relying upon the out of Court hear-say statements-allegedly made to a Police Officer on the scene, where those alleged statements were neither written, sworn to, nor made available during the Discovery Process, and where the Defense did not have any opportunity to cross-examine or even subpeona those alleged witnesses whom the Judge relied upon to make the critical ruling at the Second Suppression Hearing..??? And did the Defense Attorney assist the Government in violating his clients right to confrontation when the defense Attorney simply refused to call the alleged Co-defendant to the witness stand to be cross examined about his earlier statements made against this Petitioner, and to refute the Police Officer's out of court hear-say statements that the Officer had attributed to the Co-defendant??.

**Issue Presented**

**Initially** , the tip, the Stop, and the arrest, was based upon what a single eye-witness

employee had told the Special Police at American university. See the America University

Police Report # 961037, also see Grand Jury trans, page 4 lines 18-21, and Preliminary

Hearing trans, 7-13. The Officers entire basis for the arrest was what Mr.Darryl williams

had told them, see pages    @ exhibit 10. And the entire implied identification procedure

was alleged to have been done with the assistance of none other than Mr Williams...

However, because the Defense Attorney would not subpeona Mr. Williams to the First

suppression Hearing, Mr. Williams was not cross-examined as to exactly what he had

told the Special police at American University.

However, mid trial, the Petitioner persuaded the Judge that he would not have a fair trial

without subpeonaing Mr. Williams, henceforth, the judge sent the U.S. Marshal's to

American University to pick-up Mr. Williams, and his direct testimony refuted all of the

Special police's earlier false hear-say statements, and identification attributed to him,

See page 130-137, and 295-298 @ exhibit 9, later, the Prosecutor conceded that the

Officer's earlier testimony was indeed **unreliable** , see exhibit 4 page 25, 31-32, 46-47.

Thereafter, at the Second Suppression/Sentencing hearing, to up hold his earlier

Judgments, the Judge now relied upon the hear-say identification of **multiple employee's**

**out of Court statements allegedly made to the Police, none of whom were never**

**mentioned prior to that judgment.** See exhibit 10, trans-page 8, lines 1-14, and this

Petitioner could not confront, or question the alleged co-defendant about the Officer's

statements attributed to the co-defendant because Mr. Signet would not call the

alleged Co-defendant to the witness stand, even after he told the Judge that he intend to

call McKan as a witness, see page 203 @ exhibit 9.

Further, on page 8, line 11-13, the Judge attributed an out of court statement to the

Petitioner-about giving a reason/or excuse for why they were in the building.

**However, that false out of court statement was earlier suppressed for the**

**Governments failure to disclose that statement that was supposed to have been**

**made on the scene to a Police Officer by this Petitioner.**

Petitioner avers that this alone is sufficient to make out a violation of the Sixth

Amendment Confrontation Clause, and a Sixth Amendment claim to ineffective

assistance from the attorney who was forced to represent Petitioner, even without

Petitioner 's consent. Although Crawford Vs. Washington , 541 US. 68 , (2005) is newly

decided, the right to confront ones accuser is not.

Petitioner believes that the farmers of the U.S. Constitution would not have allowed

 admission of hear-say statements of those un-known witnesses who did not appear at

trial, unless they were unavailable to testify, or the "accused" had a prior opportunity for

cross-examination.

Moreover, albeit McKan-the alleged Co-defendant had been subpeonaed by the defense

to refute Officer Harris's out of court statements attributed to McKan, and he was also

subpeonaed to recant his earlier statements made at his Plea colluquy or be cross

examined as to why he wrote the exculpatory letter that Signet claims he lost.

However, McKan was not allowed to take the witness stand to be confronted at all,

even after Signet had told the trial Judge that he intend to call McKan to the witness stand

see trial trans, page 203 @ exhibit 9.

Secondly, although Officer Harris and Sgt, Crouch had based the

reasons for the Stop and arrest **"on the same eye-witness employee"** {Darryl Williams}

see trans, pages 10-13 @ exhibit 9, and Harris's Police Report # 109637 @ exhibit 10,

and pages 31-32 @ exhibit 10. But still the trial Judge ruled that the **identification**

**procedure that gave cause for the Stop and arrest "was made by multiple**

**employees".....who did not appear at any stage of these proceedings, and whom the**

**accused had had no prior opportunity to cross examine,**see page 8 @ exhibit 10.

The focus of the Federal confrontation Clause Of The Federal Constitutions Sixth

Amendment on the civil-law mode of criminal procedure places no constraints on the

defendant's right to confront witness against him, whom the Court relied upon to justify

its ruling.

# Conclusion

Wherefore all of the herein written reasons inter-alia, Petitioner prays that the requested
Writ be issued on any or all the grounds asserted, or that a "Show Cause Order" be issued
that the Federal government show cause why the writ should not be issued against the
State Courts actions that are clearly contrary to the Federal laws as earlier established
by the U.S. Supreme Court.

Respectfully Submitted
By *Wardell L. Tynes* #08338-007
U.S. Penitentiary, Canaan. P.O. Box 300
Waymart . Pennsylvania. 18472

## CERTIFICATION OF SERVICE

I *W.L.Tynes* Certify that a true copy of this Writ Pursuant to title 28 U.S.C. 2254 was mailed,
postage pre-paid to the Office of the U.S. Attorneys for this Middle District Of Pennsylvania
at, Washington Avenue, & Linden Street, Scranton, P.A. 18503.  On this date of 12/ 12/2006.

I *W.L.Tynes* certify that the herein written is true and correct pursuant to title 28 U.S.C. 1746.

*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

**WARDELL L. TYREE**

Petitioner(s),

vs.                                    **Civil Action No.  07-2019 (EGS)**

**CAMERON LINDSAY, et al.**

Respondent(s).

## NOTICE REGARDING BULKY EXHIBITS

Pursuant to the procedures for filing bulky pleadings, bulky exhibits have been filed in paper in this case.  The exhibits are available at the Clerk's Office for public viewing  and copying between the  hours of 9:00 a.m. and  4:00 p.m., Monday through Friday.

**NANCY MAYER-WHITTINGTON**

Clerk